J-A31041-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| KELSI WEIDNER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MCCANN EDUCATION CENTERS, INC. AND DELTA CAREER EDUCATION CORPORATION | |
| Appellants | No. 529 MDA 2014 |

Appeal from the Order Entered March 12, 2014
In the Court of Common Pleas of Cumberland County
Civil Division at No: 13-3681

BEFORE:  BOWES, OTT, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED MAY 06, 2015**

Appellants, McCann Education Centers, Inc. ("McCann") and Delta Career Education Corporation ("Delta" and, collectively with McCann, "Appellants") appeal from the trial court's March 12, 2014 order denying their preliminary objection in the form of a petition to compel arbitration.[1] After careful review, we reverse and remand.

Appellee Kelsi Weidner was training to become a laboratory technician at McCann's campus in Carlisle, Pennsylvania, pursuant to a written enrollment agreement (the "Enrollment Agreement") between Appellee and

_____

[1] **See** Pa.R.A.P. 1028(a)(6).  The trial court's order is final and appealable pursuant to Pa.R.A.P. 311(a)(8).  **Midomo Co., Inc. v. Presbyterian Housing Co.**, 739 A.2d 180, 83-84 (Pa. Super. 1999).

McCann.[2]  Appellee alleges representatives of McCann advised her she would be eligible to sit for a certification examination upon completion of her training.  Appellee alleges she subsequently learned McCann's program was not nationally accredited and that she would be ineligible to sit for the certification exam.  As a result, Appellee commenced this class action suit against Appellants alleging causes of action for breach of contract, violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, *et seq.*, and violations of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. § 1962(C), and (D).  Appellants filed preliminary objections[3] and a petition to compel arbitration, citing an arbitration clause in the Enrollment Agreement.  The trial court declined to compel arbitration, finding the parties did not enter a valid agreement to arbitrate.  This timely appeal followed.

The sole issue before us is whether the trial court erred in finding no valid agreement to arbitrate exists.  "Public policy favors arbitration to settle disputes, quickly, fairly, and economically."  **Smay v. E.R. Stuebner, Inc.**, 864 A.2d 1266, 1272 (Pa. Super. 2004).  Our review consists of a two-part

---

[2]  The complaint alleges Delta owns and operates McCann.  Delta and McCann have filed a joint brief.

[3]  Rule 1028(a)(6) of the Pennsylvania Rules of Civil Procedure permits a preliminary objection on grounds of an "agreement for alternative dispute resolution."  Pa.R.C.P. 1028(a)(6).

test, pursuant to which we analyze (1) whether a valid arbitration agreement exists and (2) whether the claim falls within the scope of the arbitration agreement. *Id.* "Whether an agreement to arbitrate disputes exists is a question of law." ***Neuhard v. Travelers Ins. Co.***, 831 A.2d 602, 604 (Pa. Super. 2003). "When we review questions of law, our standard of review is limited to determining whether the trial court committed an error of law." *Id.* Our scope of review is plenary. ***McNulty v. H&R Block, Inc.***, 843 A.2d 1267, 1271 (Pa. Super. 2004), *appeal denied*, 853 A.2d 362 (Pa. 2004), *cert. denied*, 543 U.S. 1021 (2004).

Given the trial court's disposition of this case, we will confine our analysis to whether a valid agreement exists. To answer that question, "we must examine whether both parties have manifested an intent to be bound by the terms of the agreement, whether the terms are sufficiently definite, and whether consideration existed." ***Johnston the Florist, Inc. v. Tedco Constr. Corp.***, 657 A.2d 511, 516 (Pa. Super. 1995). "If all three of these elements exist, the agreement shall be considered valid and binding." ***Id.***

First, we consider Appellants' argument that the trial court applied the wrong legal standard in answering this question. Appellants' Brief at 10-11. Specifically, Appellants argue the trial court failed to account for the public policy preference, as stated in ***Smay*** and in cases construing the Federal Arbitration Act ("FAA"), 9 U.S.C.A. § 1, *et seq.*, that the law favors arbitration. Appellants also argue the FAA preempts state law holding that

arbitration agreements are to be strictly construed. *See Midomo*, 739 A.2d at 190 (noting agreements to arbitrate must be clear, unmistakable, and strictly construed).

The FAA applies where the contract at issue involves interstate commerce. 9 U.S.C.A. § 2; *McNulty*, 843 A.2d at 1271. Appellants note that they are regulated by the federal Department of Education and Title IV of the U.S. Higher Education Act, 20 U.S.C.A. § 1701, *et. seq.* Further, the complaint alleges that Appellant Delta Career Education Corporation is a Virginia Corporation that owns McCann Education Centers, Inc. Amended Complaint, 9/11/13, at ¶¶ 3-4. Preliminary Objections, 10/1/13, at Affidavit, ¶ 4. Appellee took no position on the applicability of the FAA. The trial court acknowledged the FAA, as well as its policy of favoring arbitration, but the court also noted the FAA does not displace state law principles of contract formation. Trial Court Opinion, 3/12/14, at 5-6. The trial court went on to analyze and dispose of this case in accord with state law. The trial court did not specifically find the FAA to be applicable here.

Applicability of the FAA is a question of fact. *Duquesne Light Co. v. New Warwick Mining Co.*, 660 A.2d 1341, 1333 (Pa. Super. 1995). "Where the fact finder […] fails to to indicate whether it is applying federal or state law to the arbitration issue, an appellate court is prohibited from determining the applicability of federal law." *Id.* at 1333-34. The *Duquesne Light* Court elected not to remand for a finding on the issue, as

the result in that case was the same under federal or state law. *Id.* at 1334. We conclude the same is true in this case, and we therefore will not remand.

The trial court was correct insofar as it held that federal courts look to state law to discern whether the parties formed a valid agreement. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002). Ultimately, we rely on state law principles of contract formation to conclude that these parties manifested their intent to be bound by the arbitration clause as evinced by the plain language of the Enrollment Agreement. Given our reversal of the trial court on state law grounds, we need not address whether the FAA's policy in favor of arbitration, if applicable, also would compel reversal here. Likewise, the principles of strict construction, and the need for a clear and unmistakable agreement, as expressed in *Midomo*, do not alter the result here. The language of the Enrollment Agreement, as analyzed below, is sufficiently clear to pass muster under *Midomo*. We therefore need not decide whether the FAA policy favoring arbitration preempts the strict construction principles described in *Midomo* to the extent they can be relied on to void an otherwise valid arbitration agreement.

We now turn our attention to the record. As noted above, we have before us Appellee's amended complaint, Appellant's preliminary objections,

and Appellee's response to the preliminary objections.[4]  The parties did not conduct discovery and the trial court did not conduct an evidentiary hearing. As the existence of an agreement to arbitrate is not a matter apparent from the face of the record, Appellants properly endorsed their preliminary objections with a notice to plead.  Pa.R.C.P. 1028(a)(6), note.  Appellants attached to their preliminary objections a copy of the Enrollment Agreement, an affidavit, and a verification.  Appellee filed a response to Appellants' preliminary objections, but her response is unverified.[5]

Appellants' preliminary objections allege the existence of the arbitration clause.  They quote the clause and attach a full copy of the four-page Enrollment Agreement.  Preliminary Objections, 10/1/13, at ¶ 5, Exhibit A.  The attached affidavit alleges that "[b]y signing the Enrollment Agreement, [Appellee] acknowledged that she had read and agreed to the arbitration provision.  *Id.* at Affidavit, ¶ 6.  The affiant apparently based that assertion on language contained in the Enrollment Agreement immediately above the signature line:  "I certify that all information provided about me is

---

[4]  **See** Pa.R.C.P. 1017(a) (allowable pleadings include, among other things, a complaint, preliminary objections, and a response to preliminary objections).

[5]  Pa.R.C.P. 1024(a) provides:  "Every pleading containing an averment of fact not appearing of record in the action or containing a denial of fact shall state that the averment or denial is true upon the signer's personal knowledge [….]"  Pa.R.C.P. 1024(a).  Despite the lack of verification, Appellants did not move to strike any portion of Appellee's response.

accurate and that I have read all pages of this AGREEMENT and will abide by its provisions." Enrollment Agreement, at 2.

Appellee's unverified response repeatedly asserts the Enrollment Agreement speaks for itself and that the parties did not enter a valid agreement to arbitrate. In Paragraph 6, Appellee asserts she "never agreed to submit the issue of accreditation of certain programs to arbitration because she was misled into believing that the accreditation of the programs was not an issue that would need to be arbitrated." Response to Preliminary Objections, 10/21/13, at ¶ 6. This clearly is an averment of fact that should have been accompanied by a signed verification. Nonetheless, it is relevant only to the scope of the arbitration agreement. In this appeal, we are concerned only with whether an arbitration agreement existed. Thus, the lack of verification is of no moment. Appellee also alleges "there is no evidence to show that [Appellee] was ever presented the page containing the arbitration provision much less that she agreed to be bound by that provision." *Id.*

In summary, the preliminary objections and response thereto dispute whether the terms of the Enrollment Agreement evince the parties' execution of a valid arbitration agreement. They also dispute whether the current litigation falls within the scope of that agreement. The trial court answered the first question in the negative and did not address the second. For the following reasons, we disagree.

First, we observe several pertinent features of the Enrollment agreement. Page one introduces the parties, addresses fees, financial aid and other matters. Enrollment Agreement, at 1. Appellee initialed two paragraphs, one addressing financial aid and another addressing the times of day during which she was required to be available for classes. *Id.*

Likewise, on page two, Appellee initialed three paragraphs. The first addresses McCann's right to alter the class schedule and Appellee's right to a refund. *Id.* at 2. The second addresses the potential need for Appellee to take prerequisite courses. *Id.* The third addresses job placement assistance, and it appears in bold print and all capital letters. *Id.* The upper right hand corner of page two indicates that it is "Page 2 of 4." *Id.* Appellee and two school officials signed the bottom of page two. *Id.* As noted above, the paragraph above the signature lines indicates Appellee has read all pages of the agreement and will abide by its terms. *Id.* Immediately underneath the third signature line is the heading "Refund Policies." That heading appears in bold, all capitalized typeface similar to the placement assistance paragraph. *Id.*

The substance of the refund policy, as well as the policy for return of unearned Title IV funds, carries over onto page three. *Id.* at 3. The upper right hand corner of page three indicates that it is "Page 3 of 4." *Id.* The provisions for return of unused Title IV funds continues onto page four. *Id.*

at 4. Underneath that section is the arbitration clause. The arbitration clause reads:

> **ARBITRATION**
> You (the student) and McCann School of Business and Technology agree that any dispute arising out of our [sic] relating to this enrollment agreement, your enrollment or your attendance at McCann School of Business and Technology, whether such dispute arises during or after your attendance and whether the dispute is based on contract, tort, statute, or otherwise, shall be resolved by binding arbitration in the city and county in which the school is located within the state of Pennsylvania. You (the student) and McCann School of Business and Technology each further agrees that this arbitration provision provides each party with this exclusive remedy of redress of any grievance or resolution of any dispute arising out of this Agreement, AND EACH PARTY EXPRESSLY WAIVES ANY RIGHT, INCLUDING WITHOUT LIMITATION THE RIGHT TO TRIAL BY JURY, IT MIGHT HAVE TO SEEK REDRESS IN ANY FEDERAL, STATE OR LOCAL COURT OR OTHER FORUM, except for an action to enforce in court an arbitration award rendered to this Agreement.

*Id.* at 4 (capitalization and bold in original). The capitalized portion in the text of this paragraph appears to be in a font slightly larger than the bolded arbitration heading. The upper right hand corner of page four indicates that it is "Page 4 of 4." *Id.*

Having reviewed the four pages of the Enrollment Agreement, we consider the first prong of *Johnston the Florist*–whether the Enrollment Agreement evinces Appellee's intent to be bound by all of its terms. *Johnston the Florist*, 657 A.2d at 516. Several features of the Enrollment Agreement clearly answer this question in the affirmative. Page two, which Appellee signed once and initialed in three places, indicates that it is page

two of four. Immediately above the signature line, albeit in very fine print, the Enrollment agreement indicates that the signee has read all pages of the agreement. Immediately underneath the signature line is the heading of a new section that continues on page three. Thus, a careful reading of page two would have informed Appellee that, despite the placement of the signature line, it is not the last page of the Enrollment Agreement.

Failure to read a contract does not merit an avoidance or nullification of the contract absent proof of fraud. **Standard Venetian Blind Co. v. Am. Empire Ins. Co.**, 469 A.2d 563, 566 (Pa. Super. 1983); **see also**, **Germantown Sav. Bank v. Talacki**, 657 A.2d 1285, 1289-90 (Pa. Super. 1995) ("[W]here, as here, the debtor has not alleged fraud, and has produced no evidence to show a lack of capacity to understand the document signed, or that he or she had asked for an explanation of the contract language, the debtor must be held to the contract's terms."). Appellee's signature on page two of the Enrollment Agreement sufficiently indicates her intent to be bound by all four pages. Her signature appears underneath an acknowledgement that she read and agreed to be bound by all terms of the agreement, and page two of the Enrollment Agreement plainly indicates it is page two of four. Thus, Appellant's contention there is no evidence she ever was presented with page four of the Agreement is belied by her express acknowledgement that she read all pages of the Agreement and would abide by all its provisions. Appellant does not raise a

claim of fraud sufficient to create an issue that the arbitration provision should be stricken from the Agreement.[6]

The second and third prongs of **Johnston the Florist** are not substantially in dispute. Appellee offers no argument that terms of the arbitration clause are insufficiently definite, or that consideration was lacking. We therefore conclude the parties entered a valid agreement to arbitrate.[7]

Appellee would have us reach a contrary result based on the purported unconscionability of the arbitration agreement. Appellee argues that the Agreement is procedurally unconscionable given the gross disparity between the parties bargaining power, and substantively unconscionable because the arbitration provision unreasonably favors Appellant by denying plaintiffs like Appellee access to the courts and forcing them into arbitration.

_____

[6] Appellee alleges only that McCann made misrepresentations about the accreditation of its course of study and Appellee's ability to sit for a certification exam upon completion. Those allegations do not relate directly to the agreement to arbitrate, and therefore, they must await the review of an arbitrator. These allegations in any event, even if true (and we express no opinion), are not a sufficient basis to avoid the arbitration clause. "[A] general attack on a contract for fraud is to be decided under the applicable arbitration provision as a severable part of the contract and that only where the claim of fraud in the inducement goes specifically to the arbitration provision itself should it be adjudicated by the court rather than the arbitrator." **Setlock v. Pinebrook Pers. Care & Ret. Ctr.**, 56 A.3d 904, 910 (Pa. Super. 2012), _appeal denied_, 74 A.3d 127 (Pa. 2013).

[7] We therefore need not address Appellants' argument that equitable estoppel precludes Appellee from challenging the validity of the arbitration clause. We note that the trial court did not address that issue.

Under Pennsylvania law, a contract or term is unconscionable and therefore avoidable, where there is lack of a meaningful choice in a challenged provision and the term unreasonably favors the party asserting it. ***Salley v. Option One Mortg. Corp.,*** 925 A.2d 115, 119 (Pa. 2007). The lack of meaningful choice and unreasonableness have been termed procedural and substantive unconscionability, respectfully. ***Id.*** Contracts cannot be deemed procedurally unconscionable simply due to a disparity in bargaining power. ***Witmer v. Exxon Corp.,*** 434 A.2d 1222, 1228 (Pa. 1981). There must be some showing that the contract was formed though oppression and unfair surprise and not merely to disturb the allocation of risks due to superior bargaining position. ***Id.*** Substantive unconscionability refers to terms that are unreasonably favorable to one side and to which the disfavored party did not assent. ***Denlinger, Inc. v. Dendler,*** 608 A.2d 1061, 1068 (Pa. Super. 1992). The burden of proof to demonstrate both elements of unconscionability is upon the party challenging an agreement, with the ultimate determination of unconscionability to be made by the courts. ***Salley***, 925 A.2d at 119-20.

Here, Appellee asserts that there was gross disparity in bargaining power between the parties and she had no choice but to accept the terms of the Agreement. To support this assertion Appellee merely alleges that Appellant is a large corporation and she is a high-school graduate who possessed few choices regarding her education beyond schools like the

Appellant. Beyond these statements, Appellee has not attempted to further substantiate her procedural unconscionability claim by demonstrating for example, that she made any attempt to negotiate or change any terms of the Agreement, that she was told the terms were non-negotiable, that there were no other schools like Appellant to which she could have applied, or if there were other schools, that they too utilized the same form of contract with an arbitration clause. *See Denlinger*, 608 A.2d at 1068. In simple terms, Appellee failed to set forth sufficient averments in her answer to Appellee's preliminary objections to sustain her burden of proof to claim procedural unconscionability.

Nor can we agree with Appellee's argument the Agreement is procedurally unconscionable due to it being poorly formatted and organized. Specifically, Appellee argues the trial court correctly found the agreement to be both procedurally and substantively unconscionable. Appellee's Brief at 17-23. Our review of the trial court's opinion, however, reveals that the trial court made no such finding. Indeed, the court did not mention the term unconscionability, nor did it make a finding that the contract at issue is a contract of adhesion. *See, e.g.*, *Salley, supra* (discussing the doctrine of unconscionability as applied to arbitration agreements). The trial court did not analyze any case law applying the unconscionability doctrine. To the contrary, the trial court only found that an agreement to arbitrate had not been agreed to between the parties, a conclusion we already disapproved.

Having found that Appellee did not establish procedural unconscionability, we need not address Appellee's substantive unconscionability argument, since to succeed on her claim, Appellee must carry her burden to prove both procedural and substantive unconscionability. *See Salley, supra* at 925 A.2d 127-128 (fact finding on procedural unconscionability not necessary when arbitration agreement is not substantively unreasonable). Nonetheless, we note that Appellee does not per se challenge the terms of the arbitration provision, but instead only asserts that the provision operates to deprive her of access to the courts and to force her to arbitration. The same however, without more, could be said of every arbitration clause. This argument, however, does not answer the question as to whether or not the clause so unreasonably favors the Appellant as to be substantively unconscionable. Arbitration as a matter of public policy is favored in the law, *Smay, supra*, and the inclusion of an arbitration clause in an agreement does not by itself render the term substantively unconscionable.

Based on all of the foregoing, we therefore reverse the trial court's order and remand for further proceedings.[8]

_____

[8] The trial court did not address whether the parties' dispute falls within the scope of the arbitration clause. We will not address that question in the first instance.

- 14 -

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/6/2015